Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Kelsey L. Kuberka (SBN 321619)
Thomas E. Wheeler (SBN 308789)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 Oxnard St. Suite 780,
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
kkuberka@toddflaw.com
twheeler@toddflaw.com
*Attorneys for Plaintiff*

*Attorneys for Plaintiff, DARKO VUKOVIC and all others similarly situated*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| DARKO VUKOVIC, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> GOVERNMENT EMPLOYEES INSURANCE COMPANY and DOES 1 – 10, inclusive, <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> (1) Violation of the Colorado Consumer Protection Act (C.R.S.A § 6-1-105 *et seq*.) <br><br> **Jury Trial Demanded** |

Plaintiff Darko Vukovic ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, allege as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action Complaint against Defendant GOVERNMENT EMPLOYEES INSURANCE COMPANY (hereinafter "Defendant") to stop Defendant's practice of falsely advertising its insurance services, and to obtain redress for a Colorado class of consumers ("Class Members") who changed position, within the applicable statute of limitations period, as a result of Defendant's false and misleading advertisements.

2. Defendant, GOVERNMENT EMPLOYEES INSURANCE COMPANY, is a corporation with its principal place of business in Chevy Chase, Maryland, state of incorporation in the state of Maryland, and is engaged in the sale and distribution of insurance services.

3. Defendant represents that its insurance services will be billed at the price quoted and agreed upon, when this is in fact false. Defendant misrepresented and falsely advertised to Plaintiff and others similarly situated consumers their insurance services (hereinafter "Class Products").

4. Plaintiff and others similarly situated purchased or attempt to purchase Defendant's Class Products, and they did so on the basis that Defendant quoted the pricing of the services and agreed to provide services in exchange for premiums at the price quoted.

5. Defendant's misrepresentations to Plaintiff and others similarly situated caused them to purchase or attempt to purchase Defendant's insurance services, which Plaintiff and others similarly situated would not have purchased or attempted to purchase absent these misrepresentations by Defendant and their employees. In so doing, Defendant have violated Colorado Consumer Protection Act statutes.

## NATURE OF THE CASE & COMMON ALLEGATIONS OF FACT

6. Consumers purchased insurance services advertised to be a certain price, and in the case at bar, they did so under the impression that the price quoted and agreed upon would accurately reflect the price Defendant would charge them for insurance services.

7. Consumers rely on the representations and advertisements of insurance companies in order to know which insurance services to purchase. Details as to the price and features of the insurance services are important and material to consumers at the time they purchase insurance services from a particular insurance providers.

8. Defendant is engaged in the managing, advertising, marketing and selling insurance services.

9. When consumers purchase insurance services from insurance providers, they reasonably believe that they will receive insurance services for their vehicles at the price quoted and agreed upon.

10. Defendant profits from the sale of insurance services. Many consumers would not have purchased or attempted to purchase insurance services that are more expensive than the price quoted, or they would have purchased insurance services from a competitor.

11. Defendant conceals the fact that its quotes are subject to change and subject to and advertised in order to deceive consumers into purchasing insurance services more expensive than quoted or agreed upon.

12. Defendants do not present consumers with a written copy of the correct terms of the purchase prior to purchase, in order to conceal the deception that is at issue in this case.

13. Defendants make written and oral representations to consumers which contradict the actual nature and quality of the products that will be delivered

Page 2
CLASS ACTION COMPLAINT

to the consumer after the consumer purchases the products.

14. The aforementioned written and oral representations are objectively false, and constitute deceptive trade practices under C.R.S.A § 6-1-105 et. seq.

15. Defendant's violations of the law include without limitation the false advertising, marketing, representations, and sale of the falsely advertised Class Products to consumers in Colorado.

16. On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease advertising and selling the Class Products in a manner that is deceptive, to disclose the true nature and quality of its products in a conspicuous manner at or prior to the point of sale, and an award of damages to the Class Members, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

17. Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff, a Colorado resident, seeks relief on behalf of a Class, which will result in at least one class member belonging to a different state than that of Defendant, a Maryland Corporation. Plaintiff also seeks damages for each violation alleged herein which, when aggregated among each member of the class, exceed the $5,000,000.00 threshold for requisite amount in controversy. Therefore, both minimal diversity of citizenship and the amount in controversy requirements are satisfied for jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).

18. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2) because a significant portion of the events giving rise to this action took place here, Plaintiff lives here, and Defendant does business here.

## THE PARTIES

19. Plaintiff DARKO VUKOVIC is a citizen and resident of the State of

Colorado, County of Denver.

20. GOVERNMENT EMPLOYEES INSURANCE COMPANY is a corporation with its principal place of business in Chevy Chase Maryland, and its state of incorporation in Chevy Chase, Maryland.

21. Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or is attributable to, Defendant and/or its employees, agents, and/or third parties acting on its behalf, each acting as the agent for the other, with legal authority to act on the other's behalf. The acts of any and all of Defendant's employees, agents, and/or third parties acting on its behalf, were in accordance with, and represent, the official policy of Defendant.

22. The above named Defendant, and its subsidiaries and agents, are collectively referred to as "Defendant." The true names and capacities of the Defendant sued herein as DOE DEFENDANT 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendant by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendant when such identities become known.

23. Plaintiff is informed and believes, and thereon alleges, that said Defendant is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions of each and all its employees, agents, and/or third parties acting on its behalf, in proximately causing the damages herein alleged.

24. At all relevant times, Defendant ratified each and every act or omission complained of herein. At all relevant times, Defendant, aided and abetted the acts and omissions as alleged herein.

## PLAINTIFF'S FACTS

25. In or about May of 2018, Plaintiff contacted Defendant about purchasing insurance services for Plaintiff's uninsured vehicle. Plaintiff requested a quote without inputting Plaintiff's vehicle's Vehicle Identification Number (hereinafter "VIN").

26. On or about May 8, 2018, Defendant responded to Plaintiff, stating that Plaintiff's 6 month premium would be $629.10 for the uninsured vehicle.

27. On or about May 9, 2018, Plaintiff contacted Defendant to ask for an updated quote reflecting the vehicle's VIN. After inputting his VIN number, Plaintiff received an email from Defendant, on or about May 9, 2018, stating, "If you were to apply the quoted vehicle changes, your new six-month premium would be $629.10."

28. Plaintiff asked Defendant to clarify whether the vehicle's VIN had been reflected in the quote. On or about May 9, 2018, Defendant emailed Plaintiff stating that Defendant's records indicated that the VIN had been provided by Plaintiff and the quote reflected so.

29. In reliance on quote reflecting the Plaintiff's vehicle's VIN, Plaintiff purchased Defendant's insurance services to cover his uninsured vehicle.

30. Later that summer, Plaintiff received a charge on his account from Defendant. As Plaintiff's account was set to auto-pay, Defendant's charge did not reflect the agreed upon $629.10, but instead $718.60.

31. Plaintiff subsequently contacted Defendant in hopes of correcting Defendant's error and reducing the price to the quoted and agreed upon amount. Defendant denied Plaintiffs request.

32. To date, Plaintiff's bill has not been lowered, nor has Defendant refunded any portion of Plaintiff's payments that were in excess of the originally quoted amount.

33. Had Plaintiff known that Defendant had could charge Plaintiff an amount above what was quoted and agreed upon, he would not have purchased Defendant's insurance services.

34. Furthermore, Plaintiff did not discover, nor could he have discovered, the true nature of the insurance services until after Plaintiff's purchase and Defendant's subsequent over charging.

35. For the insurance services, Plaintiff paid more than valuable consideration. Plaintiff relied on the fact that the insurance services were being advertised at a particular price, namely that it would cost a certain amount as quoted and agreed upon. Plaintiff was never informed, in writing, orally, or in any conspicuous manner, that Defendant could increase the quoted and agreed upon price without informing Plaintiff or letting him know that the quoted price has been increased.

36. When purchasing Defendant's insurance services, Defendant informed Plaintiff that he would be able to obtain insurance services for a 6 month premium of $629.10. Plaintiff relied on Defendant's statements about the price of the insurance services in deciding to purchase insurance services. Plaintiff felt assured by Defendant that the insurance services would be priced as represented by Defendant, namely that price would reflect the quoted and agreed upon amount. Plaintiff would not have agreed to purchase Defendant's insurance services if he had known that Defendant would increase the price for insurance services to a price other than what Defendant represented.

37. Knowledge of the true nature and quality of Defendant's insurance services would have impacted Plaintiff's decision to purchase insurance services from Defendant over other brands or sellers of insurance services. Plaintiff would have found it important to his purchase decision to know exactly what price, the insurance services were that he was purchasing, and he believed that he was

purchasing insurance services at a price of $629.10 as a sixth month premium.

38. Plaintiff felt ripped off and cheated by Defendant for receiving insurance services at a price higher than quoted and agreed upon, contradicting that that which Defendant represented. Plaintiff believes that Defendant will continue its action of duping consumers into purchasing insurance services that deviates significantly from Defendant's representations, namely in the form of telling consumers that their insurance services will be priced as quoted and agreed, when in fact may be increased without warning, unless Defendant's practices are halted by way of an injunction.

39. As a result of Defendant's fraudulent practices, described herein, Plaintiff has suffered emotional distress, wasted time, and anxiety.

40. Plaintiff alleges on information and belief that it is Defendant's policy and practice to misrepresent the true price, nature and quality of its insurance services. Plaintiff asserts that this practice constitutes a fraudulent omission of a material fact relating to the nature and quality of its products that would be important to a reasonable consumer to know at the time they purchase Defendant's insurance services.

41. Plaintiff alleges on information and belief that Defendant's policy and practice is to materially misrepresent the price, nature and quality of its insurance services, through said fraudulent omissions and misrepresentations, to induce consumers to reasonably rely on the said misrepresentations, in order to induce their purchase of insurance services from Defendant over law abiding competitors.

42. Defendant have a duty to disclose the true price, nature and quality of its insurance services to consumers prior to the time they agree to purchase insurance services from Defendant. Defendant have a duty to disclose these material features of their products because such features would be highly important to a reasonable consumer.

CLASS ACTION COMPLAINT

43. Such sales tactics rely on falsities and have a tendency to mislead and deceive a reasonable consumer.

44. Defendant expressly represented to Plaintiff, through written statements, the nature and quality of its products.

45. Plaintiff alleges that such representations were part of a common scheme to mislead consumers and incentivize them to purchase Defendant's insurance services.

46. In purchasing the Class Products, Plaintiff relied upon Defendant's representations.

47. Such representations were clearly false because the true price nature and quality of the insurance services were different than represented.

48. Plaintiff would not have purchased the products if he knew that the above-referenced statements made by Defendant were false.

49. Had Defendant properly marketed, advertised, and represented the Class Products, Plaintiff would not have purchased the products.

50. Plaintiff agreed to give his money, attention, and time to Defendant because of the nature and quality of the insurance services that were advertised. Defendant benefited from falsely advertising the nature and quality of its insurance services. Defendant benefited on the loss to Plaintiff and provided nothing of benefit to Plaintiff in exchange.

51. Defendant's acts and omissions were intentional, and resulted from Defendant's desire to mislead consumers into purchasing insurance services from Defendant for which Defendant can increase the price over the agreed upon or quoted price.

**CLASS ACTION ALLEGATIONS**

52. Plaintiff brings this action, on behalf of himself and all others similarly situated, and thus, seeks class certification under Federal Rule of Civil

Procedure 23.

53. The class Plaintiff seeks to represent (the "Class") is defined as follows:

> All consumers, who, between the applicable statute of limitations and the present, purchased or attempted to purchase Class Products, and whose Class Products, namely Defendant's insurance services, were increased in price after agreeing to a quoted price.

54. As used herein, the term "Class Members" shall mean and refer to the members of the Class described above.

55. Excluded from the Class is Defendant, its affiliates, employees, agents, and attorneys, and the Court.

56. Plaintiff reserves the right to amend the Class, and to add additional subclasses, if discovery and further investigation reveals such action is warranted.

57. Upon information and belief, the proposed class is composed of thousands of persons. The members of the class are so numerous that joinder of all members would be unfeasible and impractical.

58. No violations alleged in this complaint are contingent on any individualized interaction of any kind between Class members and Defendant.

59. Rather, all claims in this matter arise from the identical, false, affirmative representations of the services, when in fact, such representations were false.

60. There are common questions of law and fact as to the Class Members that predominate over questions affecting only individual members, including but not limited to:

   (a) Whether Defendant engaged in unlawful, unfair, or deceptive business practices in selling Class Products to Plaintiff and other Class Members;

   (b) Whether Defendant made misrepresentations with respect to

the Class Products sold to consumers;

(c) Whether Defendant profited from the sale of the wrongly advertised insurance services;

(d) Whether Defendant violated C.R.S.A. §6-1-105 *et seq.*;

(e) Whether Plaintiff and Class Members are entitled to equitable and/or injunctive relief;

(f) Whether Defendant's unlawful, unfair, and/or deceptive practices harmed Plaintiff and Class Members; and

(g) The method of calculation and extent of damages for Plaintiff and Class Members.

61. Plaintiff is a member of the Class he seeks to represent

62. The claims of Plaintiff are not only typical of all Class members, they are identical.

63. All claims of Plaintiff and the Class are based on the exact same legal theories.

64. Plaintiff has no interest antagonistic to, or in conflict with, the Class.

65. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member, because Plaintiff bought Class Products from Defendant during the Class Period. Defendant's unlawful, unfair and/or fraudulent actions concerns the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff's claims are typical of all Class Members as demonstrated herein.

66. Plaintiff will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent herself and the Class.

67. Common questions will predominate, and there will be no unusual manageability issues.

# FIRST CAUSE OF ACTION

## Violation of the Colorado Consumer Protection Act

### (C.R.S.A § 6-1-105 *et seq.*)

68. Plaintiff incorporates by reference each allegation set forth above as fully set forth herein.

69. Pursuant to Colorado Consumer Protection section 6-1-105, *et seq.*, it is unlawful to engage in deceptive trade practices. A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person:

    a. Knowingly passes off goods, services, or property as those of another;

    b. Knowingly makes a false representation as to the source, sponsorship, approval, or certification of goods, services, or property;

    c. Knowingly makes a false representation as to affiliation, connection, or association with or certification by another;

    d. Uses deceptive representations or designations of geographic origin in connection with goods or services;

    e. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith;

    f. Represents that goods are original or new if he knows or should know that they are deteriorated, altered, reconditioned, reclaimed, used, or second-hand;

    g. Represents that goods, food, services, or property are of a

      particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another;

h. Disparages the goods, services, property, or business of another by false or misleading representation of fact;

i. Advertises goods, services, or property with intent not to sell them as advertised;

j. Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

k. Advertises under the guise of obtaining sales personnel when in fact the purpose is to first sell a product or service to the sales personnel applicant;

l. Makes false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions;

m. Fails to deliver to the customer at the time of an installment sale of goods or services a written order, contract, or receipt setting forth the name and address of the seller, the name and address of the organization which he represents, and all of the terms and conditions of the sale, including a description of the goods or services, stated in readable, clear, and unambiguous language;

n. Employs "bait and switch" advertising, which is advertising accompanied by an effort to sell goods, services, or property other than those advertised or on terms other than those advertised and which is also accompanied by one or more of the following practices:

      i. Refusal to show the goods or property advertised or to offer the services advertised;

      ii. Disparagement in any respect of the advertised goods, property, or services or the terms of sale;

      iii. Requiring tie-in sales or other undisclosed conditions to be met prior to selling the advertised goods, property, or services;

      iv. Refusal to take orders for the goods, property, or services advertised for delivery within a reasonable time;

      v. Showing or demonstrating defective goods, property, or services which are unusable or impractical for the purposes set forth in the advertisement;

      vi. Accepting a deposit for the goods, property, or services and subsequently switching the purchase order to higher-priced goods, property, or services; or

      vii. Failure to make deliveries of the goods, property, or services within a reasonable time or to make a refund therefor;

o. Knowingly fails to identify flood-damaged or water-damaged goods as to such damages;

p. Solicits door-to-door as a seller, unless the seller, within thirty seconds after beginning the conversation, identifies himself or herself, whom he or she represents, and the purpose of the call;

q. Contrives, prepares, sets up, operates, publicizes by means of advertisements, or promotes any pyramid promotional scheme;

r. Advertises or otherwise represents that goods or services are guaranteed without clearly and conspicuously disclosing the

nature and extent of the guarantee, any material conditions or limitations in the guarantee which are imposed by the guarantor, the manner in which the guarantor will perform, and the identity of such guarantor. Any representation that goods or services are "guaranteed for life" or have a "lifetime guarantee" shall contain, in addition to the other requirements of this paragraph (r), a conspicuous disclosure of the meaning of "life" or "lifetime" as used in such representation (whether that of the purchaser, the goods or services, or otherwise). Guarantees shall not be used which under normal conditions could not be practically fulfilled or which are for such a period of time or are otherwise of such a nature as to have the capacity and tendency of misleading purchasers or prospective purchasers into believing that the goods or services so guaranteed have a greater degree of serviceability, durability, or performance capability in actual use than is true in fact. The provisions of this paragraph (r) apply not only to guarantees but also to warranties, to disclaimer of warranties, to purported guarantees and warranties, and to any promise or representation in the nature of a guarantee or warranty; however, such provisions do not apply to any reference to a guarantee in a slogan or advertisement so long as there is no guarantee or warranty of specific merchandise or other property.

s. Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction;

70. Defendant misled consumers by making misrepresentations and

untrue statements about the Class Products, namely, Defendant sold insurance services that were of a price, nature and quality different than advertised, quoted and agreed upon, and made false representations to Plaintiff and other putative class members in order to solicit these transactions

71. Defendant knew that its representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class Members.

72. As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property, time, and attention. Plaintiff reasonably relied upon Defendant's representations regarding the Class Products. In reasonable reliance on Defendant's false advertisements, Plaintiff and other Class Members purchased the Class Products. In turn Plaintiff and other Class Members ended up with products that were different in ways that put them in danger, and therefore Plaintiff and other Class Members have suffered injury in fact.

73. Plaintiff alleges that these false and misleading representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

74. Defendant advertised to Plaintiff and other putative class members, through written representations and omissions made by Defendant and their employees, that the Class Products would be of a particular nature and quality.

75. Thus, Defendant knowingly sold Class Products to Plaintiff and other putative class members.

76. The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class Members in that Defendant persist and

continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease its false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

## PRAYER FOR RELIEF

77. Plaintiff, on behalf of herself and the Class, requests the following relief:

   (a) An order certifying the Class and appointing Plaintiff as Representative of the Class;

   (b) An order certifying the undersigned counsel as Class Counsel;

   (c) An order requiring GOVERNMENT EMPLOYEES INSURANCE COMPANY, at its own cost, to notify all Class Members of the unlawful and deceptive conduct herein;

   (d) An order requiring GOVERNMENT EMPLOYEES INSURANCE COMPANY to engage in corrective advertising regarding the conduct discussed above;

   (e) Actual damages suffered by Plaintiff and Class Members as applicable or full restitution of all funds acquired from Plaintiff and Class Members from the sale of misbranded Class Products during the relevant class period;

   (f) Punitive damages, as allowable, in an amount determined by the Court or jury;

   (g) All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(h) Pre- and post-judgment interest; and

(i) All other relief, general or special, legal and equitable, to which Plaintiff and Class Members may be justly entitled as deemed by the Court.

## REQUEST FOR JURY TRIAL

78. Plaintiff requests a trial by jury as to all claims so triable.

Dated: November 16, 2018    Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN, PC

By: /s/Todd M. Friedman
TODD M. FRIEDMAN, ESQ.
Attorney for Plaintiff